IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARINA KARAKOZOVA, Ph.D.,

    Plaintiff(s),

v.

UNIVERSITY OF PITTSBURGH,

    Defendant(s).

09cv0458
**ELECTRONICALLY FILED**

## Memorandum Order

**I.    Introduction**

This is an action for employment discrimination. *Pro se* plaintiff, Marina Karakozova, Ph.D., is a citizen of the Russian Federation and was employed as a Research Assistant at the University of Pittsburgh, School of Pharmacy. Plaintiff, who is an H-1B visa holder (originally set to expire on August 15, 2010), has been employed at the University of Pittsburgh since December 2006, and had a contract to work in her current position at University of Pittsburgh from December 15, 2008 to June 14, 2009. On January 23, 2009, her supervisor, Yong Tae Kwon, Ph.D, sent her a letter stating that her contract would end on June 14, 2009 due to insufficient funding. On the current record, defendant has submitted no credible evidence or argument that plaintiff was not qualified to do her job or that she performed her job unsatisfactorily.

Plaintiff seeks this Court to issue her "emergency relief"[1] to retain her employment until

---

[1]This relief is requested in doc. no. 2, captioned by plaintiff as follows: "Motion to Grant Temporary Relief to Obligate Respondent to Continue Employment of Marina Karakozova till Honorabel City of Pittsburgh Commission on Human Rights and/or Honorable Justices of the Court will Release Final Decision Based on My Complaint."

she can exhaust her administrative remedies[2] before the Equal Employment Opportunity Commission (EEOC), the Pennsylvania Human Relations Commission (PHRC), and the University of Pittsburgh, thus allowing her to remain a resident of the United States during that time. Without the grant of the emergency relief requested, plaintiff's H-1B Visa will expire on June 14, 2009, and she will be required to return to her home in Russia.

Plaintiff alleges that she was subject to discrimination on the basis of national origin, in that her supervisor decided not to renew her contract because of alleged insufficient funding, yet hired and/or retained other similarly situated persons of Korean descent.[3]

## II.    Standard of Review

The purpose of a preliminary injunction is to maintain the status quo during the pendency of litigation in order to prevent a moving party from sustaining an irreparable injury should that party ultimately prevail on the merits. *Phillips Petroleum Co. v. U.S. Steel Corp.* 566 F.Supp. 1093, 1104 (D.C. Del.,1983) (citing *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929)) (other citations omitted). The decision to enter a preliminary injunction is committed to the sound discretion of the district court. *West Indian Co., Ltd, v. Gov't of Virgin Islands*, 812 F.2d 134, 135 (3d Cir. 1987). By awarding a preliminary injunction, the court seeks to:

> [P]reserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose . . . , a preliminary injunction is customarily

---

[2] Defendant joined the issue of failure to exhaust administrative remedies in its Motion to Dismiss Amended Complaint. (Doc. No. 12).

[3] Plaintiff also argues that the defendant retaliated against her for filing a grievance before the University and/or a complaint before the EEOC/PHRC. The Court does not find any credible evidence of retaliation on the current record since the decision not to renew plaintiff's contract came before any claims of discrimination advanced by plaintiff.

granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.

*Council of Alternative Political Parties v. Hooks*, 179 F.3d 64,69 (3d Cir. 1994). As such, "a decision on a preliminary injunction is, in effect, only a prediction about the merits of the case." *Id*. at 70 (*citing US. v. Local 560 (I.B.T.)*, 974 F.2d 3 15, 330 (3d Cir. 1992)).

In determining whether to grant a preliminary injunction, a district court must consider four factors: (1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest. *Highmark Inc., v. UPMC Health Plan*, 276 F.3d 160, 171 (3d Cir. 2001). The court may only look at facts "presented at a hearing, or . . . presented through affidavits, deposition testimony, or other documents, about the particular [situation]" of the movant. *Adams v. Freedom Forge Corp.*, 204 F.3d 475,487 (3d Cir. 2000).

The burden of proof lies with the movant, who must produce "evidence sufficient to convince the trial judge that all four factors favor preliminary relief . . . ." *Opticians Ass'n ofAm. Ind. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). The movant "must show a clear right to relief [where] . . . no disputed issues of fact" exist. *Charles Simkin & Sons, Inc., v. Massiah*, 289 F.2d 26,29 (3d Cir. 1961). At the outset of the preliminary injunction analysis, the movant must demonstrate the first two factors, the likelihood of success on the merits and the probability of irreparable harm. *Morton v. Beyer*, 822 F.2d 364,367 (3d Cir. 1987). If relevant, the district court must then consider the last two factors, the potential harm to the nonmoving party and whether the public interest is served. *Id*.

As a court sitting in equity, the district court must weigh the four factors, but it is not incumbent on the movant to prevail on all four factors, only on the overall need for an injunction. *Torrence v. Thompson,* 2008 WL 2755237, *2 (W.D. Pa. 2008) (citing *Neo Gen Screening, Inc. v. TeleChem Intern., Inc.*, 69 Fed.Appx. 550, 554 (3d Cir.2003)). A sufficiently strong showing on *either* the likelihood of success or irreparable harm may justify an injunction, even if a movant's showing on the other two factors is lacking. *Id.* (emphasis added). The burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the first two factors; however, the same is not true of the second two factors. *Id.*

In regard to the first factor, the movant has the burden to show a likelihood of success on the merits. *Highmark Inc.*, 276 F.3d at 171. In finding whether the movant has met its burden, the court must keep in mind that the standard for granting a preliminary injunction "differs from the standard for granting a permanent injunction." *ACLU v. Black Horse Pike Regional Bd Of Educ.*, 84 F.3d 1471, 1477 (3d Cir. 1996). In other words, granting a preliminary injunction should be based on "the *likelihood* that plaintiffs [will] succeed on the merits [and not on whether] plaintiffs have succeeded on the merits and are entitled to permanent relief." *Id.* (emphasis added).

The second factor requires the movant to show probable irreparable harm "which cannot be redressed by a legal or an equitable remedy." *Acierno v. New Castle County*, 40 F.3d 645,653 (3d Cir. 1994). To show such "irreparable harm," the movant must demonstrate a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. *Adams*, 204 F.3d at 485. Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of

4

litigation, weighs heavily against a claim of irreparable harm." *Acierno*, 40 F.3d at 653 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Economic loss does not constitute irreparable harm. *Id*. Moreover, "[e]stablishing a risk of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Instead, the movant "has the burden of proving a 'clear showing of immediate irreparable injury.'" *Id. (quoting Continental Group, Inc. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir.1980)) (emphasis added). Therefore, it is insufficient for the movant to show that the harm will occur only in the indefinite future. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

If the movant has met its burden of proof in showing the first two factors, the district court must then consider the third and fourth factors, if relevant. The third factor weighs the interests and relative harm of the parties, i.e. "the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Other circuit courts have observed, "[t]he more likely the [movant] is to win, the less heavily need the balance of harms weigh in [the movant's] favor." *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1568 (7th Cir. 1996). Also, "[t]he injury a [nonmoving party] might suffer if an injunction were imposed may be discounted by the fact that the [nonmoving party] brought that injury upon itself." *Novartis Consumer Health*, 290 F.3d at 596. *See also Pappan*, 143 F.3d at 806 ("The self-inflicted nature of any harm suffered by [the party opposing the injunction] also weighs in favor of granting preliminary injunctive relief.").

Finally, the fourth factor questions whether an injunction would serve the public interest. Generally, in actions involving private interests, "the public interest [factor] will not be as

5

important as the other [three] factors." 13-65 James Wm. Moore et al., *Moore's Federal Practice Civil* § 65.22[3] (Matthew Bender 3d ed. 2003) (emphasis added). However, "in actions implicating government policy or regulation, or other matters of public concern," and in actions that are "found to have a substantial impact on the public interest," the court will consider the public interest factor. *Id. See Yakus v. US.,* 32 1 U.S. 414,440 (1944) ("Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved."). In such cases, "[w]here the [movant] has demonstrated a likelihood of success on the merits, the public interest leans even more toward granting the injunction." *Novartis Consumer Health*, 290 F.3d at 597. Nevertheless, courts will not award preliminary injunctions "if it is found that public policy would be harmed." *Id. See PG Const. Co., Inc. v. George & Lynch, Inc.*, 834 F. Supp. 645,659 (D. Del. 1993) (court denied the injunction because movant's claim was not supported by statutory or common law).

**III.     Analysis**

**(1)     Reasonable Probability of Success on the Merits**

After careful consideration of the plaintiff's arguments and supporting documentation and defendant's responses thereto, the Court finds that (1) there is a reasonable probability of success on the merits at least with regard to her claims of discrimination on the basis of national origin. Plaintiff has set forth evidence to demonstrate that defendant's decision not to renew her contract was pretextual. That is, she has alleged (and submitted affidavits and counter-affidavits to support her position) that her contract was not renewed by Dr. Kwon based upon insufficient

funding while other similarly situated persons of Korean descent were retained and/or were appointed to the same or similar positions during the same time period.

**(2)    Irreparable Harm**

The Court further finds that (2) plaintiff has made a strong showing of immediate and irreparable harm if the relief she requests (to stay employed during the time she pursues her administrative remedies) is not granted because she will either return to Russia voluntarily, or will be subject to immediate deportation. Defendant alleges in support of its position that she will not be irreparably harmed if her employment is not continued because there are other visa application which are available to her. While that may be the case, on this record, the Court cannot determine that there are other visa application processes available to plaintiff through the Immigration and Naturalization Service, and, if so, whether she would qualify for these classifications.[4]

**(3) Balancing of Harm to the Parties**

The Court finds that after balancing the harm to the parties, there will be a greater harm to plaintiff if the injunction is not granted, and the potential harm to defendant is more minimal. At most, defendant will be required to continue plaintiff's employment for approximately three more months (90 days) at the University. Given that her salary was not exorbitant (approximately $30,000 per year), the financial burden on the University is not substantial. And since there is no evidence that the University found plaintiff's work to be unsatisfactory, or that she was otherwise unqualified for the position, her continued employment for a short period of

---

[4]The Court also notes the counter-affidavit of Attorney Goldstein submitted on behalf of plaintiff. (Doc. No. 40-5).

time will not create any significant burden to the University.

**(4)    Public Interest**

The Court finds that the public interest weighs in favor of granting the injunction because it allows plaintiff to maintain the status quo while properly pursuing her claims through the administrative agencies. In short, preserving the status quo is important in a case such as this, so that plaintiff make seek justice in an orderly process.[5]

**IV.    Conclusion**

Although this is a close case, the Court finds that the equities weigh in favor of granting a preliminary injunction.[6] *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64,69 (3d Cir. 1994). Because, however, plaintiff has not yet exhausted her administrative remedies, the Court will stay the case for a period of approximately ninety (90) days, while she *promptly* pursues her claims before the EEOC, the PHRC, and through the University grievance appeal processes. In the interim, plaintiff shall maintain employment at the University of Pittsburgh with equal salary and benefits. In addition to continuing her efforts to advance the administrative process, the Court encourages plaintiff to continue to seek new employment with another

---

[5]The Court recognizes defendant's most recent arguments in its supplemental response to plaintiff's motion for emergency relief (doc. no. 41) that the any foreign national who is terminated from employment and files a charge of discrimination may demand continued employment and contend irreparable harm based upon the host of serious consequences implicated by potential deportation, and that plaintiff had advanced notice of defendant's decision and instead has waited until the last minute to seek Court intervention. The Court understands defendant's position and does not intend to send plaintiff the message that she has an open ended amount of time within which to pursue her claims, but finds that a short extension of her employment is the most equitable solution in this unique case.

[6]The Court wishes to thank the University of Pittsburgh for graciously paying the costs of mediation (two mediations), which unfortunately, despite the good faith efforts of both parties, did not resolve the case.

8

University or other institution, should the administrative process and/or the instant litigation fail to resolve in her favor, since after all, a decision on a preliminary injunction is only a prediction about the merits of the case. See *Id.* at 70 (*citing US. v. Local 560 (I.B.T.)*, 974 F.2d 3 15, 330 (3d Cir. 1992)). The Court also encourages plaintiff to seek and retain an attorney, and to seek and retain a qualified interpreter for further proceedings before this Court.

As to the amount of bond to be set, the Court will exercise its discretion and require movant to post bond in the amount of $1,000.00. *Frank's GMC Truck Center Inc. v. General Motors Corp.,* 847 F.2d 100 (3d Cir. 1988) (while the posting of a bond is required by Fed. R. Civ. P. 65 (c), the amount of the bond is within the discretion of the District Court).

Accordingly, for the reasons set forth hereinabove, the Court HEREBY ORDERS that plaintiff's motion to grant temporary relief (doc. no. 2) is GRANTED. Plaintiff shall post bond in the amount of $1,000.00. On September 1, 2009, the parties shall file a JOINT status report setting forth the disposition or progress of the administrative proceedings. The Court will thereafter conduct at Status Conference at 8:45 a.m. on September 10, 2009.[7]

SO ORDERED this 11th day of June, 2009.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

---

[7] Defendant's motion to dismiss the amended complaint (doc. no. 12) is DENIED at this time; Plaintiff's motions to strike affidavits of David Chubb and Barry Gold (doc. nos. 32 and 33) are DENIED; and Plaintiff's motion for "releasing decision about plaintiff's motion for emergency relief before second mediation" (doc. no. 34) is DENIED AS MOOT.

cc: All Registered ECF Counsel and Parties