IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARINA KARAKOZOVA, Ph.D.,

    Plaintiff(s),                     09cv0458
                                           **ELECTRONICALLY FILED**

    v.

UNIVERSITY OF PITTSBURGH,

    Defendant(s).

**MEMORANDUM ORDER OF COURT DENYING PLAINTIFF'S MOTION FOR RECUSAL (DOC NO 133) AND PLAINTIFF'S MOTION TO STAY DISCOVERY (DOC NO 134)**

## I. Introduction

*Pro se* plaintiff, Marina Karakozova, Ph.D., initiated this employment discrimination action alleging that defendant failed to renew her employment contract on the basis of her national origin (Russian), and in retaliation for filing an administrative complaint of discrimination against her prior employer. See Complaint, doc. no. 1. Simultaneously, plaintiff filed an Emergency Motion for Temporary Relief to Obligate Defendant to Continue her Employment. Doc no. 2.

As of the date plaintiff initiated this lawsuit, she had failed exhausted her administrative remedies. Nonetheless, due to the sensitive nature of the timing issues surrounding her potential immediate deportation if her Emergency Motion for Temporary Relief was not granted, by Order dated June 11, 2009 (doc. no. 42), the Court granted her request for emergency relief in this unique case, and took the unusual and extraordinary action of compelling defendant to continue her employment for a period of ninety (90) days after the expiration of her employment contract while she promptly pursued her administrative remedies, including the University grievance process.

On September 23, 2009, after the 90-day period had run, Defendant renewed its Motion to Dismiss the Amended Complaint (doc no. 100). This Court granted the motion, finding plaintiff had

still failed to exhaust her administrative remedies, and closed the case. Doc. no. 106. The matter was reopened upon plaintiff's motion and over defendant's objection, less than three months later. See text order dated 1/21/2010.

Since reopening the matter, plaintiff filed her [Second] Amended Complaint (doc no. 112) which defendant answered (doc. no. 113) and discovery ensued. On June 8, 2010, defendant filed Motion for Protective Order (doc. nos. 129-130) which this Court granted on June 9, 2010. See text order dated June 9, 2010 and doc. no. 131. Plaintiff filed a Motion for Protective Order dated June 28, 2010 (doc. no. 132), and on June 29, 2010, this Court ordered defendant to respond by July 8, 2010.

While plaintiff's Motion for Protective Order was pending, she filed the instant Motion for Recusal (doc. no. 133) and a Motion to Stay Discovery (doc. no. 134). Pursuant to this Court's Order, defendant filed a response to both Motions on July 14, 2010. See doc. nos. 137 and 138.

This Court will now address and deny the plaintiff's Motion for Recusal and her Motion to Stay Discovery. Doc. nos. 133 and 134.

## II. Background

As noted above, this case incepted on April 17, 2009 when this *pro se* plaintiff filed her Title VII employment discrimination complaint. Doc. no. 1. On that same day, Plaintiff filed an Emergency Motion for Temporary Relief to Obligate Defendant to Continue her Employment. Doc no. 2.

On April 24, 2009, plaintiff filed an Amended Complaint. Doc. no. 3-1. Defendant filed a Motion to Dismiss the Amended Complaint on May 14, 2009. Doc. no. 12. Although the Motion

to Dismiss was predicated upon plaintiff's failure to exhaust her administrative remedies (see doc. no. 12), and thus, merely required a simple responsive brief explaining whether the administrative remedies had, in fact, been exhausted, plaintiff requested and received an extension of time to respond to the Motion to Dismiss. Doc nos. 19-20. Plaintiff responded to the Motion to Dismiss on May 26, 2009. Doc no. 27.

Before the Court could rule on defendant's Motion to Dismiss, the parties engaged in mediation efforts on May 27, 2009, June 4, 2009 and June 8, 2009. See doc. nos. 30, 35, 37 and the text entry at 5/28/2009. Having no success after three mediation meetings, on June 11, 2009, this Court denied defendant's Motion to Dismiss, granted plaintiff's Motion for Emergency Relief, and took the unusual and extraordinary action of compelling defendant to continue plaintiff's employment for a period of ninety (90) days to avoid her immediate deportation. Doc. no. 42. This Order also directed plaintiff to promptly pursue her administrative remedies and encouraged her to advance her efforts to locate new employment. See Doc. No. 42 at 8.

During the six weeks following this Court's decision to grant plaintiff's motion for temporary relief, plaintiff filed approximately twenty (20) documents before this Court seeking clarification, reconsideration, and even advisory opinions on numerous issues relating to the Court's prior order temporarily granting her motion for emergency relief. Among those filings, plaintiff also submitted "notice[s] of plaintiff's opinion" (see e.g. doc. nos. 50, 62, 63, 65), documenting numerous perceived issues at the University lab and assorted unrelated problems of which she wished to make the Court aware.

Contrary to this Court's instructions to advance the administrative process, plaintiff undertook actions to contest the content of the Court's Order granting her temporary relief (doc. no.

42). See doc. nos. 48, 49, 66, 67, 68, 69. Some of these filings evidence plaintiff's attempts to seek a back-door extension of the Court's 90-day stay of her employment with defendant, and evidence her attempts to have this Court reconsider its prior order requiring her to pursue her administrative remedies. See doc. nos. 66 and 68.

The next series of motions filed by plaintiff were motions to extend the amount of time she had to pursue her administrative remedies. See doc. nos. 78, 79, 80, and 81. The Court denied plaintiff's motion to extend time to pursue her administrative remedies to the extent it required defendant to continue her employment while she pursued such administrative remedies. Doc. no. 88. In reaching this decision, this Court determined that plaintiff had not shown a reasonable likelihood of success on the merits, and had not shown that a balancing of the equities weighed in favor of continuing to require defendant to pay plaintiff as an employee. *Id.* Thus, this Court deemed a continuation of the temporary relief previously ordered to be unwarranted. *Id.* Accordingly, the Court's Order of September 8, 2009, terminated plaintiff's Motion for Emergency Relief (doc no 2.) as of September 10, 2009 at noon.

Subsequent to this Order, plaintiff filed a series of motions and briefs all of which amounted to requests for reconsideration of this Court's September 8, 2009 denial of her request to extend the time for her to exhaust her administrative remedies and remain employed by defendant. See doc nos. 90, 94, 97 and 98. The Court denied these reconsideration requests finding that plaintiff had failed to show that this Court's September 8, 2009 Order contained errors of law or fact, or that there was newly discovered evidence which would warrant a reexamination of the Order. Doc. No. 99.

At this juncture, defendant renewed its Motion to Dismiss the Amended Complaint (doc. no. 100) which this Court granted without prejudice and closed the case. Doc. no. 106. The Order

expressly noted that plaintiff had attached evidence which conclusively proved that she had failed to exhaust her administrative remedies; thus, this Court held that it could not hear her case until those remedies had been exhausted. Doc. no. 106

In January of 2010, plaintiff filed a Motion to Reopen this matter, which this Court granted, over defendant's objections. See doc nos. 109, 111 and text order dated 1/21/2010. Plaintiff filed a [Second] Amended Complaint on February 3, 2010, and defendant answered it on February 17, 2010. See doc. nos. 112 and 113.

After meeting with the parties on March 25, 2010, this Court issued its case management order setting all discovery and pretrial deadlines. Doc no. 122. On April 6, 2010, plaintiff filed a Motion for Sanctions against defendant (doc no. 123), and after this Court ordered defendant to respond (see text order dated April 7, 2010), plaintiff requested and received permission to file a reply brief. Doc. nos. 125-126. Ultimately, the Court denied plaintiff's Motion for Sanctions. See text order dated April 27, 2010.

Next, on June 8, 2010, defendant filed a Motion for Protective Order (doc nos. 129-130) noting that plaintiff had requested defendant provide information relating to non-party employees. Doc no. 130. Specifically, plaintiff sought the personnel records, compensation and the immigration status of certain non-employees as well as research grant application materials. *Id.* This Court granted the defendant's Motion for Protective Order on June 9, 2010 so that plaintiff would be able to obtain copies of the documents she sought, but required that she maintain the confidential nature of defendant's documents. See text order dated June 9, 2010 and doc. no. 131.

On June 28, 2010, plaintiff filed a Motion for Protective Order (doc no. 132) and on June 29, 2010, this Court ordered defendant to respond by July 8, 2010. Plaintiff's Motion for Protective

Order seems to make two points: (1) that defendant asked various individuals – except plaintiff – who were potential custodians of electronically stored information ("ESI") pertaining to this case to preserve said ESI; and (2) that plaintiff asked defendant for any ESI she created (presumably while employed by defendant) so that she could review it and determine if she thought it was relevant to this litigation. Doc no. 132. Defendant filed a response on July 8, 2010. Doc no. 136.

On July 2, 2010, while her Motion for Protective Order was pending, plaintiff filed a Motion for Recusal (doc. no. 133) and a Motion to Stay Discovery (doc. no. 134). Defendant filed responses pursuant to this Court's Order on July 14, 2010. Doc nos. 137 and 138.

This Court will now address and deny the plaintiff's Motion for Recusal and Motion to Stay Discovery. Doc. nos. 133 and 134. The outstanding Motion for Protective Order will be decided separately.

### III. Plaintiff's Recusal Motion

Plaintiff raises ten (10) issues in her Recusal Motion. Doc. no. 133. The first, fourth and the last issue focus on Orders of Court requiring defendant to respond to some of plaintiff's motions, and the lack of Orders of Court requiring plaintiff to respond to some of defendant's motions. *Id.* From plaintiff's perspective, the Court's practice of ordering defendant to respond to some of her motions, while not reciprocally ordering plaintiff to respond to all of defendant's motions, illustrates this Court's bias. *Id*.

Of the remaining seven issues, six of the seven issues raised by plaintiff all relate to Orders this Court issued before it granted defendant's renewed Motion to Dismiss, closed this case, then re-opened the matter on plaintiff's motion three months later. *Id.* Each of these issues will be

6

described and discussed in greater detail below.

**IV. Legal Standard**

Under the law of the United States Court of Appeals for the Third Circuit, the relevant and only inquiry under 28 U.S.C. § 455(a) governing recusal is whether a reasonable person, knowing all the acknowledged circumstances, might question the district court judge's continued impartiality. *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 164 (3d Cir. 1993).

In *Kensington International Limited and Springfield Associates, LLC,* 353 F.3d 211 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit expounded on the above-described legal test for determining whether recusal is warranted. Specifically, the Court of Appeals in *Kensington* held:

> Whereas § 455(a) is a standard catchall disqualification provision, § 455(b)(1) is more narrow in that it requires a judge to disqualify himself if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* (quoting 28 U.S.C. § 455(b)(1)) (other citations omitted). Unlike disqualification under § 455(a), however, which may be waived by the parties, the grounds for disqualification under § 455(b)(1) generally cannot be waived.

*Id.*, p. 220-221.

Personal bias, in order to form a basis for recusal, must come from a source outside of the official proceedings (an "extrajudicial source"). *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 266 (3d Cir. 1995). Consequently, because the source of the bias must be an external source, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*., citing *United States v. Bertoli*, 40 F.3d 1384 (3d Cir.1994). Judicial rulings alone almost never constitute

7

a valid basis for a bias or partiality motion for disqualification; in and of themselves, apart from surrounding comments or accompanying opinion, they cannot possibly show reliance on an extrajudicial source and can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

There is as much an obligation for judge not to recuse himself when there is no occasion for him to do so as there is for him to do so when there is. *United States v. Burger*, 964 F.2d 1065 (10th Cir. 1992), on remand 809 F.Supp. 851, *certiorari denied* 507 U.S. 1033 (1993); see also *Vangarelli v. Witco Corp.*, 808 F.Supp. 387 (D.N.J. 1992) (Just as judge should remove him or herself from case if moving party raises sufficient allegations regarding judge's bias, judge has affirmative duty not to recuse him or herself if movant fails to establish reasonable doubt concerning his or her impartiality). Recusal and reassignment of judge is not a matter to be lightly undertaken by a district judge; a judge in proper cases has a duty to recuse himself, but also has concomitant obligation not to recuse himself in absence of valid reason for recusal. *Simonson v. General Motors Corp.*, 425 F.Supp. 574 (E.D.Pa.1976).

## V. Analysis

### 1. Defendant is Ordered to Respond – Plaintiff is Not Required to Respond

Starting with the first, fourth and the last issue plaintiff raises in her Recusal Motion, her primary concern is that this Court has ordered defendant to respond to most of plaintiff's motions, but has not required plaintiff to respond to defendant's motions as often. See doc. no. 133. To this end, plaintiff offers the most recent exchange of motions (the parties' Motions for Protective Orders)

8

as an example (see item no. 10 at doc. no. 133, p. 6) of this bias. She uses her Motion for Correction of Errors (doc. no. 64) as another example of this bias. See item no. 4 at doc no. 133, p. 3.

On June 8 , 2010, defendant filed a Motion for Protective Order (doc nos. 129-130) noting that plaintiff had requested information relating to non-party employees. Doc no. 130. Specifically, plaintiff sought the personnel records, compensation and the immigration status of certain non-employees as well as the research grant application materials. *Id.* The motion indicated that defendant was willing to turn over the sensitive materials but would not do so until plaintiff agreed to keep the documents "confidential" as that term was defined by defendant's protective agreement. After several attempts to communicate this information with plaintiff, it became apparent that plaintiff was not going to the sign the protective agreement, so defendant sought a court order requiring plaintiff to keep the sensitive material confidential. On June 9, 2010, without seeking a response from plaintiff, this Court granted defendant's Motion for Protective Order. See text order dated June 9, 2010 and doc. no. 131. By granting defendant's Motion for Protective Order, this Court ensured that plaintiff would be able to obtain copies of the documents she sought, while protecting the confidential nature of defendant's documents.

Ordering one party to respond to a motion under the circumstances described above, hardly illustrates bias or partiality on the part of this Court. To the extent that plaintiff is attempting to assert personal bias, she has failed to present any extrajudicial source to speak to such bias as required by law.

Similarly, plaintiff argues this Court needs to recuse because it ordered defendant to respond to her "Motion for Correction of Errors" (doc. no. 64). See doc. no. 133, p. 3. The errors pointed out by plaintiff in her motion included, *e.g.*, her title as a research "associate," not a research

9

"assistant". When the Court ordered defendant to respond to this motion (see text order dated July 13, 2009), defendant indicated it had no objection to the corrections requested. Doc. no. 70. The Court granted plaintiff's motion. Doc. no. 71. As indicated above, the Court's decision to allow defendant an opportunity to respond to plaintiff's proposed clarifications does not exhibit bias, and the final judicial ruling <u>granting</u> plaintiff's motion clearly does not establish bias or a partiality on the Court's part.

Next, on June 28, 2010, plaintiff filed a Motion for Protective Order (doc. no. 132) and on June 29, 2010, by way of text order, this Court ordered defendant to respond to plaintiff's Motion. Defendant responded to the motion on July 8, 2010. Doc. no. 136.

Plaintiff's Motion for Protective Order, though very unclear, appears to raise two issues. First, plaintiff comments that defendant asked various individuals – except her – who may be custodians of electronically stored information ("ESI") pertaining to this case to preserve said ESI. Second, plaintiff wants any ESI she created (presumably while employed by defendant) so that she can review it and determine if she thinks its is relevant to this litigation or if should be subject to a protective order. Doc no. 132.

Without discussing the likelihood of plaintiff's success on this highly unusual motion, this Court ordered a response with the hope of gaining some additional insight with respect to second issue raised by plaintiff. This judicial ruling alone does not establish bias or a partiality on the Court's part. See *Blanche Road*, *supra*.

**2. Plaintiff not Given Enough Time to Respond**

The remaining seven issues all express plaintiff's displeasure with the Court's individual

rulings on various matters.[1] Seven of the eight issues all pre-dated this Court's decision to re-open this case after dismissing it when plaintiff failed to exhaust her administrative remedies.

First, plaintiff complains that this Court did not afford her enough time to respond to defendant's initial Motion to Dismiss. Doc. no. 133, p. 2. As noted above, time was of the essence per plaintiff due to her pending deportation status yet, despite this fact, after setting an initial deadline, the Court granted plaintiff's request for additional time to file a Response to the Motion to Dismiss. See text orders dated May 18, 2009 and doc. nos. 19-20. Moreover, the Court ultimately denied this Motion to Dismiss on June 11, 2009. Doc. no. 42. Thus, despite the fact that plaintiff complains that she was not given enough time to respond to the motion, the motion was denied – this Court ruled in her favor. Thus, plaintiff has failed to show bias.

**3. Amended Case Management Order Adopted Some Dates from the Original CMO**

Next, plaintiff complains that this Court stayed her case when it denied defendant's Motion to Dismiss (doc. no. 42) but then issued an amended case management order (doc. no. 60) entered on July 2, 2009 (before the Court dismissed and then re-opened the case), which contained three deadlines that had already passed: the deadline for exchanging Rule 26 materials, the deadline to amend the pleadings or add new parties, and the deadline to indicate whether the parties would agree to proceed in front of a United States Magistrate Judge. See doc no. 133, p. 2. First, the parties had

---

[1] The Court also notes that the vast majority of plaintiff's motions for reconsideration were meritless – meaning they failed to claim that: (1) there had been an intervening change in the controlling law, (2) new evidence not previously available, had surfaced, nor (3) clear error of law or fact had occurred resulting in manifest injustice. See, *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). Yet, plaintiff has asked this Court to reconsider its decisions numerous times. Not having obtained the relief originally sought, nor having received it upon reconsideration, it appears to this Court that plaintiff is now attempting to "judge shop," thereby prompting this Motion for Recusal.

completed or dealt with each of the deadlines that had passed, and all other deadlines set by the Amended Case Management Order were for dates far in the future, well-beyond the 90-day stay. (See doc. no. 60, e.g. discovery due by 12/4/2009; Plaintiff Pretrial Statement due by 1/4/2010; Defendant Pretrial Statement due by 1/14/2010; Plaintiff Expert Reports due by 11/10/2009; Defendant Expert Reports due by 11/20/2009; Expert Depositions to be completed by 12/4/2009; Summary Judgment due by 12/11/2009; Response to Summary Judgment due by 12/21/2009). Plaintiff is not suggesting that this Order (doc. no. 60) in any way impeded her from obtaining all Rule 26 disclosures from defendant, nor is she arguing that she needed to amend her Complaint or add a party; rather, she is pointing out that this Court entered an amended case management order with stale dates and then claims this equates to bias or partiality. Considering that this amended case order (doc. no. 60) was entered after the parties had met with an mediator three times, and after plaintiff amended her complaint once, plaintiff is hard-pressed to show how this Order exhibits bias or lack of impartiality on the part of the Court, especially given that its Order impacted both parties.

**4. Orders Denying Plaintiffs Two Motions for Reconsideration (Doc. nos. 75 and 77)**

Plaintiff next claims that this Court provided two different orders – one for the public view (doc. no. 77) and one for the parties to view (doc. no. 75). Both orders (doc. nos. 75 and 77) involve this Court's decision denying two of plaintiff's Motions for Reconsideration (see doc nos. 66 and 68). The original Order (doc. no. 75) states that ". . . the Court has reminded plaintiff on at least two occasions of her obligation to continue the administrative process and seek new employment." The corrected Order (doc no. 77) states that ". . .  the Court has reminded plaintiff on at least two occasions of her obligation to continue the administrative process and has "encouraged" her to seek new employment . . . ." Both orders are posted on CM/ECF and both are available for public

viewing. Thus, plaintiff's argument on this point is moot.

5. **Court Order Denying Plaintiff's Motion to Extend Time to Pursue Administrative Remedies (doc no. 88)**

Contrary to plaintiff's assertions set forth in her Motion for Recusal (doc. no. 133 p. 4-5), this Court denied plaintiff's Motion to Extend Time to Pursue her Administrative Remedies because she had failed to advance the administrative process during the 90-day extension the Court had previously given her, and because she had not shown a reasonable likelihood of success on the merits of her claim. See doc. no. 88 at p. 7-8. Plaintiff notes that the Court's Order discusses the affidavit of one of defendant's employees (Dr. Kwon) and suggests that under Rule 6(a) the Federal Rules of Civil Procedure, she should have been given time to rebut it . Doc. no. 133 pp. 4-5. Plaintiff claims this Court exhibited bias by not allowing her the requisite amount of time to file a reply brief rebutting this affidavit.[2] Again, her displeasure with this Court's prior ruling denying her Motion to Extend Time, does not evidence bias or support a recusal.

6. **Double Jeopardy**

Next, plaintiff appears to make a double jeopardy argument with respect to defendant's Renewed Motion to Dismiss (doc. no. 100). See doc. no. 133, p. 5. As explained above, after the 90-day period expired, defendant renewed its Motion to Dismiss for failure to exhaust administrative remedies. Doc. no. 100.[3] Plaintiff seems to believe that once a particular motion is made it cannot be made again and cites to the Fifth Amendment, specifically the "double jeopardy" clause, in

---

[2] Plaintiff did not seek leave of Court to file a reply brief to defendant's response, nor did she file one.

[3] As noted by this Court, plaintiff's own response included documentation which unequivocally established for this Court that she had not exhausted all of her administrative remedies, and thus, this Court granted the renewed Motion to Dismiss. Doc. no. 106.

13

support of her position. The double jeopardy principle does not apply here under these circumstances, and thus, granting defendant's renewed motion to dismiss does not demonstrate any bias or partiality on the Court's part.

7. **The Court's Denial of Plaintiffs's Motion for Sanctions (doc. no. 123 and text order dated 4/27/2010)**

Plaintiff's final argument essentially takes issue with this Court's decision deny Plaintiff's Motion for Sanctions. Again, mere disagreement or displeasure with a Court's ruling on a matter is not evidence of bias warranting recusal.

### VI. Conclusion

The Court's judicial rulings alone do not constitute a valid basis for disqualification or recusal predicated on bias. In addition, plaintiff has failed to present any evidence that in reaching the decisions with which she takes issue, the Court relied on an extrajudicial source.

Accordingly,

NOW, this 15th day of July, this Court will deny Plaintiff's Motion for Recusal (doc no. 133) and will simultaneously deny her Motion to Stay Discovery (doc. No. 134) which was predicated upon the Recusal Motion.


cc: All Registered ECF Counsel and Parties

Marina V. Karakozova
320 South Mathilda Street Apt 6
Pittsburgh, PA 15224